ALAN R. VARLEY *v.* NINA B. VARLEY
(9729)

PETERS, SHEA, COVELLO, SPADA and HENNESSY, Js.

Argued October 7, 1982—decision released March 15, 1983

*Nina B. Varley,* pro se, the appellant (defendant).

*Joel M. Ellis,* with whom, on the brief, was *Edward S. Hyman,* for the appellee (plaintiff).

COVELLO, J.   On August 28, 1972, the plaintiff obtained a divorce from the defendant.  As an incident to the decree, the state referee set out to the plaintiff a one-half interest in the former marital home at 63 Edward Street, Newington, which interest he had quitclaimed to his wife during the term of their marriage.  The validity of that ruling and other matters concerning this divorce were thereafter reviewed by this court and no error was found. *Varley* v. *Varley,* 170 Conn. 455, 365 A.2d 1212 (1976) ; *Varley* v. *Varley,* 180 Conn. 1, 428 A.2d 317 (1980) ; *Varley* v. *Varley,* 181 Conn. 58, 434 A.2d 312 (1980).

The plaintiff commenced the present action seeking a sale of the Edward Street property and a division of the proceeds.  Counsel appeared for the defendant and the pleadings were closed.  The court thereafter granted the plaintiff's motion for partition by sale in accordance with a stipulation and proposed judgment submitted by the parties through their counsel.  Pursuant to the judgment, the premises were then sold at public auction.  The defendant was the high bidder.

The court approved, accepted and confirmed the committee's report and the proposed sale.  A supplemental judgment entered in due course ordering distribution of the sale proceeds.

Within this procedural framework, there lie innumerable pleadings filed by the defendant pro se

directed at every aspect of the proceeding. The docket sheet contains ninety-eight entries. From the underlying judgment and the almost uniform denial of each of her claims, the defendant has appealed. She advanced thirty-five claims in her preliminary statement of issues and has pursued fifteen of them on appeal. We find no error.

The defendant first claims error in the entry of the judgment authorizing the sale of the property. This order of sale was entered in accordance with a stipulation to that effect signed by the defendant's attorney. The general rule is that parties are bound by the procedural acts of their counsel. *Monroe* v. *Monroe,* 177 Conn. 173, 181, 413 A.2d 819, cert. denied, 446 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 496, 234 A.2d 825 (1967). The burden is on the party claiming otherwise, to prove that this should not be the case. *Monroe* v. *Monroe,* supra, 182. The defendant asserted that the stipulated judgment was the product of a conspiracy and that she had not been informed. Despite her continued assertion of these otherwise uncorroborated claims, the trial court repeatedly rejected these essentially factual claims raised time after time throughout the course of the proceedings. The credibility of witnesses is a matter uniquely within the province of the trier. *Corbin* v. *Corbin,* 179 Conn. 622, 624–25, 427 A.2d 432 (1980).

The defendant next claims that the court erred in accepting the committee's report, confirming the deed and sale and allowing compensation for the committee. She argues in part, that the quitclaim deed, whereby she originally received the Edward Street property from her former husband, con-

tained language prohibiting his ever reacquiring any interest in this property.[1] She claims, therefore, that no interest should have been set out to him in the divorce. This being the case, she further claims that there was no basis in the present action for the order directing the sale of the property.

The language in the deed, which forever bars the grantor from claiming any right or title in the quitclaimed premises is the traditional language found in such deeds. It serves to extinguish any interest which the releasor may have in the real estate up to the time he tenders the instrument. It does not act as a bar to the releasor thereafter reacquiring an interest in the property from some other source such as an equitable decree incident to a divorce action. See *Smith* v. *Groton,* 147 Conn. 272, 276, 160 A.2d 262 (1960); *Dart* v. *Dart,* 7 Conn. 250, 256 (1828).

The defendant further claims that she was erroneously barred from giving evidence as to moneys and other consideration which she had given her former husband at the time he quitclaimed the property to her. The parties' legal interests in the Edward Street property, considerations given therefor, and the eventual declaration of their respective equitable interests in the land are all matters which were properly the subject of the divorce proceedings. The divorce action was previ-

[1] The defendant's additional appendix contains a copy of the quitclaim deed which reads in part as follows: "To have and to hold, the premises, with the appurtenances thereof, unto the said releasee and unto her heirs and assigns, to them and their proper use and behalf so that neither the releasor nor any other person under me or them, shall hereafter have any claims, right or title in or to the premises or any part thereof, *but therefrom I and they are by these presents forever barred and secluded.*" (Emphasis added.)

ously reviewed by this court and no error was found. *Varley* v. *Varley,* 170 Conn. 455, 365 A.2d 1212 (1976). Any claim to a greater interest in the land based on matters which predate the divorce decree is now barred by the doctrine of res judicata. *Lechner* v. *Holmberg,* 165 Conn. 152, 155, 328 A.2d 701 (1973).

The defendant next challenges as unreasonable the amount of the fee awarded the committee. The reasonableness of committee fees is a matter within the sound discretion of the court. It is only in the case of a clear abuse of discretion by the trier that we may interfere. *Hoenig* v. *Lubetkin,* 137 Conn. 516, 525, 79 A.2d 278 (1951). Such is not the case here. Examination of the record discloses that the final bid price was $41,000. The report of the committee discloses numerous calls from the defendant, arrangements for advertising, placement of a sign, the receipt of telephone inquiries concerning the property, the conduct of an auction sale with forty to forty-five persons present, preparation of a bond for deed, preparation of a deed and representation at closing. We conclude that these facts constituted an adequate factual basis to support the finding of $2500 as reasonable compensation for the committee.

The defendant next claims that the court erred in connection with a prospective ruling concerning the scope of evidence to be introduced at a hearing on a motion for supplemental judgment and determination of priorities. Examination of the record discloses that the court granted a motion to determine priorities and assigned the matter for future hearing. In assigning the hearing, the court issued a memorandum in which it stated that evidence as

to capital improvements at the later hearing would be limited to the time period from the date of the divorce to the date of sale, any earlier considerations now being res judicata by virtue of the earlier divorce decree. The defendant claims that she was thereby prevented from introducing relevant evidence concerning the parties' respective financial contributions to the purchase of this property, subsequent capital improvements and the matter of the quitclaim deed previously discussed.

There is nothing in the record, the briefs or the appendix that indicates that the defendant ever offered such evidence, that an objection thereto was sustained or, in fact, that such a hearing as ordered in the memorandum ever took place. Consequently, this claim presents nothing for this court to review. In order to raise properly such an issue before a reviewing authority, the appellant's brief must include the question or offer of exhibit, the objection and the ground upon which it was based, the ground upon which the evidence was claimed to be admissible, the ruling and any exception thereto. Practice Book §.3060F (c) (3).

The defendant further claims error in the court's ruling with respect to her motion for disclosure and production. Examination of the record reveals that such a motion was filed on September 27, 1976. An objection was filed on October 5, 1976. There is no record, however, of any ruling on this objection or the motion to which it was directed. Again, this claim presents nothing for this court to review.

The defendant next argues that the court erred in denying her motions to reopen and vacate dated January 31, 1977, and February 9, 1977, respectively. Both of these motions address again the

issue of the language in the quitclaim deed given to the defendant by her former husband and the issue of the authority of her attorney to join in the motion for judgment by stipulation. These motions, their subject matter having been addressed and decided at an earlier stage in the proceedings, were properly denied as being a wasteful repetition. "Parties cannot be permitted to waste the time of courts by the repetition in new pleadings of claims which have been set up on the record and overruled at an earlier stage of the proceedings." *Hillyer* v. *Winsted,* 77 Conn. 304, 306, 59 A. 40 (1904).

The defendant next claims that the court erred on March 9, 1979, in taking up her claim for a jury trial, when such a matter was not assigned on that day's court calendar for hearing. Examination of the record discloses that the defendant agreed to have this matter heard,[2] and we find no error in the court having done so.

The defendant next claims that the court erred in denying her claim for a jury trial. General Statutes § 52-500 makes it clear that court ordered sales of real property are equitable proceedings,[3] and we have so held. *Gaer Bros., Inc.* v. *Mott,* 147 Conn. 411, 415, 161 A.2d 782 (1960). General Statutes § 52-218 provides that the court may order factual issues in equitable proceedings to be tried

---

[2] The transcript of March 9, 1979, discloses, in part, the following:
"The Court: You have a claim for the jury list, I understand.
"Mrs. Varley: Yes, your honor.
"The Court: Do you want to be heard on that today?
"Mrs. Varley: Yes. I would like to have this heard by a jury.
"The Court: All right. Why?"

[3] General Statutes § 52-500 provides in relevant part: *"Any court of equitable jurisdiction may,* upon the complaint of any person interested, order the sale of any estate, real or personal, owned by two or more persons . . . ." (Emphasis added.)

by a jury of six.[4] Use of the permissive language "may" connotes a clear legislative intent to authorize the court to exercise its discretion on this matter. The defendant claims no abuse of this discretion nor does the record disclose this to be the case. Therefore, we find no error in the court's refusal to order this matter tried to a jury.

The defendant next claims that the court erred in denying her motion for nonsuit dated May 26, 1978. Examination of the record discloses that the motion was directed to the plaintiff's failure to file a previously requested copy of the judgment in the original divorce action. The motion also refers to the conspiracy to defraud the defendant of her interest in the Edward Street property and raises again the matter of the quitclaim deed given Mrs. Varley by her former husband, both of which claims had been argued earlier to the court. The record further discloses that on August 17, 1978, the plaintiff filed a supplemental compliance attaching a copy of the divorce judgment. Thereafter, on August 25, 1978, the court denied the defendant's motion.

"Orders made pursuant to the rules on discovery are, generally speaking, within the sound discretion of the trial court." *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532 (1949). Since the missing judgment was promptly supplied and the other issues raised had been previously considered by the court, we find no abuse of the court's discretion in denying this motion.

The defendant next argues that the court erred in denying her motion of February 21, 1979, to

[4] General Statutes § 52-218 provides in relevant part: "Upon the application of either party, the court *may* order any issue or issues of fact in any action demanding equitable relief to be tried by a jury of six." (Emphasis added.)

reopen and vacate the stipulated judgment of October 26, 1976. The claims made to the court were (1) that the judgment agreed to by her counsel was done without her knowledge; (2) that the auction sale by a committee was unnecessary; (3) that the lawyers were engaged in a conspiracy; (4) that the premises were not appraised by the committee and (5) that the withholding of interest on the sale proceeds being held by the clerk was unconstitutional.

The matters of the entry of the stipulated judgment and the claimed conspiracy have already been discussed and disposed of herein. *Monroe* v. *Monroe,* 177 Conn. 173, 181–82, 413 A.2d 819, cert. denied, 446 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). The necessity of the sale was conceded by the parties through their proposed judgment by stipulation of October 8, 1976, which provided for such a sale and which the court thereafter approved.

The fact that the premises were not appraised does not constitute error. Proceedings by way of a foreclosure by sale require an appraisal of the property to be sold.[5] The present proceedings are not in the nature of a foreclosure but the equitable sale of real property pursuant to General Statutes § 52-500. This latter statute contains no provisions requiring an appraisal.

Proceeds of a committee sale of real property are required by statute to be paid into court.[6] The committee here conducted the auction sale on November 20, 1976. The sale was ratified and approved by the court on January 24, 1977, with direction to convey the property on January 28,

[5] See General Statutes § 49-25.
[6] See General Statutes § 52-502.

1977. This occurred and, after deduction of expenses, the net proceeds were paid into court and held by the clerk pending the further order of the court. The matter of the clerk's retention of the money without accrual of interest to the plaintiff or the defendant[7] was not raised until February 21, 1979, when the defendant filed the motion to reopen and vacate the stipulated judgment. Other than the defendant's obviously tardy assertion that this long recognized statutory procedure is unconstitutional, we are not offered any explanation as to why this is the case, nor do we see any reason so to hold.

The defendant next argues that the court erred in hearing a motion for determination of priorities while she was without the benefit of counsel. Examination of the record discloses that at the time of this hearing, there were appearances by two counsel for the defendant in the file in addition to the defendant's pro se appearance. This was not a circumstance where appearing counsel were unavailable at the time assigned for hearing, but rather a situation where the defendant claimed that no attorney was any longer willing to come to court in her behalf. The defendant is unable to point to any legal authority standing for the proposition that a party must be represented by counsel in a civil matter, we know of no such authority, and do not so hold now. See *Brasier* v. *Jeary,* 256 F.2d 474, 476 (8th Cir), cert. denied, 358 U.S. 867, 79 S. Ct. 97, 3 L. Ed. 2d 99 (1958).

The defendant next claims that the court erred in denying her motion to open and vacate judgment and supplemental judgment dated July 16, 1979.

---

[7] See General Statutes § 4-33.

This thirty-three paragraph motion contains a full chronicle of the parties' ownership of the Edward Street property, their subsequent divorce action and the disposition therein, reviews again her claims against her counsel and the committee, describes the alleged conspiracy and advances for the first time a claim that the property was misdescribed.

The defendant argues that the court erred in refusing to hear testimony on the issues of conspiracy, the consideration previously given the plaintiff for his interest in the property, and the language of the quitclaim deed which allegedly precluded the plaintiff from reacquiring an interest in the property. She also claims that the court erroneously refused to accept her testimony on the issue of the property being misdescribed, the court having stated that, as a lay person, she was not competent to testify on such an irregularity.

All of these issues except the matter of the land description had either been resolved in prior proceedings or had previously been addressed and decided in this case. There was no new claim concerning these matters. The court was therefore correct in refusing to readdress these issues, it being a wasteful repetition of the court's time. *Hillyer* v. *Winsted,* 77 Conn. 304, 306, 59 A. 40 (1904).

The question of the defendant's competency to testify on technical real estate matters is an issue to be determined by the trier through an assessment of the nature of the technicality involved and the proposed witness' level of expertise concerning these matters. Since there was no offer of proof made with respect to either of these considerations,

the court's exclusion of the testimony of the lay witness was a matter within its sound discretion. *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73 (1964); *Dunn* v. *Finley,* 151 Conn. 618, 621, 201 A.2d 190, cert. denied, 379 U.S. 939, 85 S. Ct. 344, 13 L. Ed. 2d 349 (1964). The defendant offers no argument claiming that the court abused this discretion nor does an examination of the record disclose one.

The defendant next claims error in the court's calculation of the amount to be divided. Examination of the supplemental judgment discloses approval of the following expenses:

| | |
|---|---|
| Hartford Courant – advertising | $ 215.60 |
| Frank C. Wishner – sign | 77.63 |
| Zuccardi Sposito Assn., Inc. – insurance | 25.00 |
| Barrett L. Krass – reimbursement for lumber for sign | 4.10 |
| Conveyance tax | 47.30 |
| Total expenses | $ 369.63 |
| Committee fee | 2500.00 |
| Total fees and expenses | $2869.63 |

Thereafter, $46 was paid to the clerk of the superior court. Thus, for the purposes of calculating the division of the sale proceeds, the court concluded there were sums on hand as follows:

| | | |
|---|---|---|
| Gross sales price | | $41,000.00 |
| Less: Expenses of sale | $ 369.63 | |
| Committee fee | 2500.00 | |
| Court fee | 46.00 | |
| Total fees and expenses | | 2915.63 |
| Amount to be considered for purpose of the division of proceeds | | $38,084.37 |

This sum differs by $1000 from a figure of $39,084.37 earlier reported to be on hand. It is evident from an examination of the record, however, that it is the earlier figure which was in error and that the $38,084.37 used by the court in making the final division is the correct amount.

Having arrived at $38,084.37, the court divided this sum by two and set out $19,042 to the plaintiff less $100 found due the defendant in consideration of her installation of a door. Since back taxes in the amount of $4734.12 had been paid out of the sale proceeds at the closing, the court's method of dividing the proceeds had the practical effect of charging to the defendant's share all of these taxes. She claims error in this calculation.

Examination of the memorandum of decision discloses that the defendant had the exclusive use of the premises since the entry of the judgment on August 28, 1972, and that the plaintiff had received no benefit from the property during the period for which the taxes were adjusted. This being the case, it was within the court's province to adjust the proceeds payable to each party to reflect this equitable consideration. *Levay* v. *Levay,* 137 Conn. 92, 96, 75 A.2d 400 (1950); *Neumann* v. *Neumann,* 134 Conn. 176, 55 A.2d 916 (1947); *Rentz* v. *Eckert,* 74 Conn. 11, 16, 49 A. 203 (1901); *Johnson* v. *Olmsted,* 49 Conn. 509, 518–19 (1882).

The defendant next claims that the court erred in awarding interest on the plaintiff's share of the sale proceeds from May 7, 1976, the date this action commenced, to July 12, 1979, the date of the entry of the final supplemental judgment. She claims that the interest should be calculated instead from the date of the closing, January 31, 1977. Her only

offer with respect to this proposition is a mathematical calculation to that effect in her brief. Absent a discussion of this point, we consider the issue abandoned. " 'Assignments of error are also deemed to be abandoned where they are merely mentioned in the brief without any discussion of the particular issues mentioned.' *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721 [1971]; *Pluhowsky* v. *New Haven,* 151 Conn. 337, 345, 197 A.2d 645 [1964]." *Stoner* v. *Stoner,* 163 Conn. 345, 349, 307 A.2d 146 (1972).

The defendant finally argues that the court erred in not crediting her some $900 which she alone claimed was expended when the garage roof allegedly collapsed during a storm. The judge stated that he did not believe her testimony. This being the case, we may not find error as "it is in the sole province of the trier to pass upon the credibility of the witnesses and the weight to be accorded the evidence." *Corbin* v. *Corbin,* 179 Conn. 622, 625, 427 A.2d 432 (1980).

There is no error.

In this opinion the other judges concurred.